We have one case on our call, and we've allotted 15 minutes for the appellant, 15 minutes for the appellee, 5 minutes in rebuttal. I don't use the timing lights, but I'll hold you to the time, so watch the hour. Okay? Call the case, please. 11-2381 People v. Rondell Boyd Please report, Brent and Carol, for Mr. Boyd. This case must be remanded for a new trial because the trial court failed to ensure, and the record does not reflect, that Rondell Boyd knowingly and intelligently waived his constitutional right to a jury trial. Now, the pretrial investigation established that Rondell was a young man with some fairly substantial mental deficiencies. Having been born addicted to cocaine, he suffers from attention deficit disorder and depression, he has the reading and verbal skills of an elementary school child, and he has substandard reasoning and comprehension ability. Now, the trial court was aware about these facts, and in addition to those, the court's own interactions with Rondell should have tipped him off that Rondell needed a little extra explanation in order to understand exactly what was going on. Counsel, what interaction are you referring to other than he didn't know that EM was electronic monitoring? Well, also at the arraignment, Your Honor, when the court was reading the charges against Rondell, he asked Rondell if he understood. Rondell said no, and so the court had to go on to give further explanation. So that's just showing, as an example, to the court that, okay, this is not an average defendant. He needs a little extra help. What language did he speak? He spoke English, didn't he? He did, Your Honor. It was his only language, wasn't it? From my understanding, correct. He had reading ability of a third grader? Yes. He had been examined and determined that he was sufficiently intelligent to have understood the Miranda warnings? Oh, he was understood once they were explained to him, and again, we're not saying that Rondell was completely incapable of knowingly waiving his right to a jury trial. Okay. The issue is the record doesn't reflect that his waiver was knowing and intelligent. Well, let's see what the record says. The court says, Mr. Boyd, your case is set for trial. You have the right to a trial by jury. Your attorney has handed me a document entitled a jury waiver. Is that your signature? The answer, yes. That indicates to me that you wish to give up your right to a trial by a jury and have a trial by a judge. Is that right? Yes. Anybody make any promises to you? No. Are you making that decision of your own free will? Yes, sir. Didn't he ask for an explanation of any of those things, like he had asked for explanations of what EM meant, or he asked for an explanation when the judge read the charges to him? So what leads you to believe he didn't understand what the judge was saying? Well, he didn't ask for an explanation of the charges or what EM meant on his own. It was only until the court asked him, do you understand, that he did. So there's no indication, or the judge shouldn't have just assumed that this young man who, you know, with such severe mental issues would just automatically know what a jury trial meant. And plus, to question him, the judge, whether or not he's doing it by his free will, does anyone promise him anything, all that shows is that the waiver may have been voluntary. But the voluntariness of the waiver is not sufficient. The waiver also has to be knowingly and intelligently made. The record does not reflect that it was. Now, I realize the state points out that in the arraignment, the judge did give some explanation of a jury trial. However, he never asked Brundell afterwards, do you understand this? And the arraignment occurred almost a full year before the waiver, and to expect someone with, I don't know, a young man with attention deficit disorder and all these other, you know, well-documented issues to have somehow remembered that through all this year, through all that year, is just completely unreasonable. You rely to a great extent on the one-year gap between the judge's full and complete explanation of what a jury trial is, and, you know, you jump forward a year later, and then he finally gets to the point where he's, you know, waiving the jury trial in front of the judge. Is the gap of time really that important, or is it sort of a red herring? No, it's extremely important in this case. It wouldn't be, I think, a normal defendant, but we don't have a normal defendant here. This is a young man who has severe learning disabilities. Like, being just told, like, one sentence one time a year prior is just unreasonable to expect this boy who, you know, has reading comprehension, if he had a problem remembering and comprehending what he's reading at a day-to-day level, it's incredibly unreasonable to expect this one sentence made a year prior to somehow have made such an impression on him that we can just reasonably assume that his waiver was knowing and intelligent. Again, this Court has to make, you know, all reasonable presumptions against a waiver, and on this record it would be completely unreasonable to read it. What leads you to believe that attention deficit disorder prevents someone from understanding their right to a jury trial? Well, Your Honor, there's no, again, we're not saying that he's unable to. We're saying that it has not been sufficiently explained to him at the time so that. What does attention deficit disorder have to do with that? Well, if. . . Do you know what attention deficit disorder does? I'm not a doctor, Your Honor. However, given the fact that it's not just the attention deficit disorder. . . It's verbal and reasoning, and reasoning and comprehension skills are extremely substandard. So all the amount of information that was in the pre-trial investigation indicates that this is a young man, that you can't just, you know, say something to him once and expect him to, you know, understand it for a lifetime. And plus, the Court never asked him if he understood it. He just told him, just as initially he told Verndell what the charges were against him, and Verndell didn't understand it the first time. He required further explanation. Mr. Carroll, you're asking us to establish a rule here, and when we do that, we have to look ahead and see if we do establish this rule, what are the consequences? Are you telling us, if we rule in your favor, every time a judge sees sort of a background report, which the judge may not have before him at the time, you know, the plea is entered, that somebody has this kind of disability, that they're going to have to engage a psychologist to interpret whether the person actually understands what a jury is as opposed to what a judge is, or where are we going, what road are we headed down here? Well, Your Honor, I'm not asking this Court to adopt a new rule. I'm just asking this Court to follow what is already held in the Fong case, where the circumstances show that a defendant might not completely understand the jury trial. All the Court has to do is go a little farther than you might normally. I have a problem just applying Fong here, because it dealt with a person who was raised in a foreign culture, where jury trials didn't exist, if I remember the facts correctly. So you could reasonably expect that such a person who lands in America from another country might not appreciate what a jury trial is, whereas someone like Mr. Boyd, who has been here all his life and presumably has watched television, or at least been schooled in American schools, knows what the difference between a jury trial and a judge trial is. Do you have a case other than Fong that you can strongly rely on that would get you where you need to be? Well, I think any case stating that a jury waiver needs to be intelligently and knowingly made. The Bell case that Fong relies on didn't involve a foreign national, yet the Court still found that there was a defendant initially stated that they didn't understand the jury waiver, and then the Court went on with some additional explanation. The reviewing Court found, well, there the record didn't establish the waiver is knowing and intelligently made. So I don't think the principle in Fong doesn't rely on the fact that the defendant was a foreign national. That fact is just what led the Court to say, okay, maybe this person needs further explanation. But it's the indication that the defendant may not fully understand the jury trial that's the problem. But just as Fong, the defendant, well, while the Fong defendant might not have understood the jury trial for a different reason than Verndell, that doesn't change the fact that in both cases there's an indication that the defendant may not have fully understood the jury trial right and needed further explanation. Is there any evidence in this record that any of these things that he suffered from interfered with his ability to understand the Court's explanation? Is a person who is bipolar incapable of understanding what a jury waiver means? Not necessarily. How about a person who has post-traumatic stress disorder? I don't think anything is necessarily. What about ADHD? What was that, John? ADHD, attention deficit hyperactivity disorder. I think that could... You know what that is? It's what they used to call years ago ants in your pants. It's the kid that jumps up and down in class all the time and can't sit down. It's a kid who you give him something and he can work on it for 10 minutes but can't work on it for an hour because he can't focus for an hour. That's ADHD. It doesn't mean that they're not intelligent. Again, Your Honor, I'm not saying that Bell was incapable of understanding. And again, you're saying attention deficit disorder may prevent someone from being able to focus. That's the issue with the one... They'll focus for long periods of time. It doesn't mean they don't understand things. Again, the issue here is not whether or not Boyd was capable of understanding. On this record, can this court say that the waiver was knowing and intelligent? Given his background, given the fact that he didn't understand things that the court was telling him, shows that the court should have done something more. And again, we're not asking for the moon here. All we're asking is that the court should have, at the time of the waiver, given an explanation, what a jury trial is, the difference between a jury trial and a bench trial, and maybe even asked Boyd, do you understand what you're doing? The court never did that in this case at any point during this proceedings. The court never asked Boyd if his attorney discussed the matter with him. This issue, this record is bare on whether or not he actually understood the jury trial. And given his background, it is unreasonable for this, it would be unreasonable for this court to presume that he understood his jury trials, especially given that the reviewing court must make every reasonable presumption against a waiver in this court, or in this case. Unless you have any further questions. Okay. May it please the court, counsel, Christine Cook, assistant state's attorney on behalf of the people. The issue before this court are the facts and circumstances in this record sufficient to affirm a knowing and voluntary jury waiver. And the record in this case is clear that there is sufficient evidence to affirm. It should be noted that the defendant was VCXed. He was found fit to stand trial. He was found legally insane. And it was found that he understood his Miranda rights. Counsel, do you mean he was found legally sane? Yes. I think you said insane. Oh, I'm sorry. No, legally sane. I apologize. And further, the court spent time in explaining the process of a jury trial to the defendant at arraignment, when he explained what a jury trial was. It was at this point during the arraignment that the defendant spoke up and asked the court to explain the function of EM, because he didn't know what that was. The trial court explained EM. The defendant indicated he understood. There are two different occasions where this case was originally set for a bench trial, and both the trial judge and defense counsel engaged in conversations about scheduling for the bench trial. On both of those occasions, found in the record at L3 and Q3, the court and the defense attorneys have conversations about their scheduling, because she was scheduled for a jury trial, the court was scheduled for a jury trial, and they didn't think they were going to be able to fit a bench trial in. And the defendant never indicated that he had any questions between a jury trial and a bench trial. Further, during the appeals process, Judge Claps explained to the defendant what he needed to do to perfect his right to an appeal, and the defendant again voiced his confusion. I don't understand what that means, the notice of appeal. On U13 and 14, the court then goes on to explain that to the defendant. This record shows that this defendant was engaged and clearly had no compunction about asking the trial judge what was happening at his trial. The defendant's argument before this court is nothing but pure conjecture. This record should also reflect that the assistant public defender in this case did a really nice job representing this defendant. Not just legally, but she went above and beyond the call of duty. She had the defendant's foster mother in. She came in at every court date. She testified or talked to the judge briefly about getting off of EM, about curfew restrictions, about what kind of a boy this defendant was, whether she was going to have trouble controlling his curfew. It turns out the defendant wound up being prom king. This public defender went to great lengths to go through the defendant's background to engage him and his foster mother and review all of his records. She was the one that had the defendant BCX. The court and the public defender had a lot of interaction with this defendant. These are people that would notice if something was remiss. They would have asked. Ms. Cook, there's a point in the record, and I apologize for not being able to find it right now, but I had written it down, where the defendant asked the judge, how can I be found guilty if I'm actually not guilty? Right, absolutely. That shows some confusion. It shows confusion, but what it really shows, Justice, which is very common, is a confusion about how he can be found guilty on the basis of accountability. That's a very common confusion at 26th and California. Defendants commonly believe that if they didn't strike the blow, if they didn't fire the gun, that they can't be guilty. That's a confusion about accountability more than anything else. I think the record bears that out pretty clearly. And how does the record bear that out? Because we just said I heard this bare comment from him. Of course, he's pleading guilty to a crime, and then he says, well, I'm really not guilty. Because he doesn't understand. I don't think he understands the legal ramifications of accountability. It was argued by the public defender that he wasn't the one striking the blows. He was the follower. And the judge makes several comments about that, too, that he must have been an idiot for being a follower, that you need to pick a better group of friends. He was with younger friends, wasn't he? I believe they were younger, but clearly the alphas of the group. Yeah, yeah, undoubtedly. He got caught up in a wrong group, and even the foster mother makes a couple of comments based on that as well, that he was following. And the judge makes several comments to him throughout the proceedings about him needing to establish some responsibility and making a new group of friends. This record is very clear that the defendant was told what a jury trial was. He had many opportunities to question that if he was confused, and the record bears out that he asked plenty of questions about things he didn't understand. The defendant's argument is pure conjecture. Between the record and the BCX and the well-established case law, this court doesn't have a basis for reversing. Accordingly, based on those contained in our brief, as well as the arguments today, the people respectfully request that this court affirm. Counsel, thank you. Rebuttal. A few short things, Your Honor. First, the fact that Verndell was found fit and sane doesn't answer the question for this court. If it did, then we'd never get to the question of whether or not there's a trial should be a jury or a bench trial, because there would be no trial. And two, we're not making any ineffective assistance counsel claims, but so the fact that defense counsel might have done a good job is irrelevant to the question at hand. The question is whether or not the record shows that the waiver was knowing and intelligent, and whether or not the defendant brought in the foster or the defense counsel brought in the foster mother and was nice to the defendant doesn't answer that question. Again, we just ask this court to remand for a new trial, because this record just does not show that Verndell Boyd, knowingly and intelligently waived his right to a jury trial. Mr. Carroll, if there is an admonition by the court that we've discussed that was about a year before that says, quote, trial by jury would be 12 individuals selected from the community, by yourself, your attorney in the state, et cetera, et cetera. If we took that admonition and moved it a year forward to the time when he was talking about some other things immediately before the plea, would you be here today making the same argument? Is there a difference? Yes. I think there is a difference. Again, I think it's just giving his background, expecting him to that admonition. All right. So let's take that admonition, let's move it to a more appropriate time. Yes. So we lose that argument. Yes. What else was the judge supposed to have done? If he made that explanation at the time of waiver, then I don't think we'd be here, Your Honor. Okay. I understand. Yes. Okay. Questions? Counselors, thank you. Thank you very much. Justice Cunningham will participate in the disposition of this case. He's unable to be here today. He will have a full use of the tapes, the oral argument, and certainly has been furnished with the briefs. Thank you very much. This matter will be taken under advisement. Court stands adjourned.